UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARCO T. BARBANTI,<br><br>        Plaintiff,<br><br>        v.<br><br>QUALITY LOAN SERVICE CORP., a California Corporation; EDDIE RAMIREZ AND JANE DOE RAMIREZ, Husband and Wife; BANK OF NEW YORK, a New York corporation, as Trustee, Pursuant to the Terms of That Certain Pooling and Servicing Agreement Dated as of 11/1/96 Related to Metropolitan Asset Funding Inc., Mortgage Pass-through Certificates Series 1996-a; OCWEN LOAN SERVICING, LLC, a Delaware corporation; GINA JOHNSON AND JOHN DOE JOHNSON,<br><br>        Defendants. | NO. CV-06-0065-EFS<br><br>**ORDER CONSTRUING QUALITY LOAN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS A MOTION TO DISMISS AND DENYING IN PART, DENYING AS MOOT IN PART, AND GRANTING IN PART SUCH MOTION; AND GRANTING PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

    A telephonic hearing was held in the above-captioned matter on July 5, 2006. Plaintiff was represented by Timothy Durkop. Matthew Cleverly appeared on behalf of Defendants Quality Loan Service Corp. and Eddie Ramirez (hereinafter collectively, "Quality Loan Defendants"), while Robert Wayne Norman Jr. appeared on behalf of Bank of New York, Ocwen Loan Servicing, LLC, and Gina Johnson. Before the Court were Quality Loan Defendants Motion for Summary Judgment (Ct. Rec. 18) and

ORDER -- 1

Plaintiff's Motion to Strike Portions of Defendants' Brief in Support of Motion for Summary Judgment (Ct. Rec. 40).  After reviewing the submitted material and applicable legal authority and hearing oral argument, the Court is fully informed.  The Court grants Plaintiff's motion and denies in part, denies as moot in part, and grants in part Quality Loan Defendants' motion, which was construed as a motion to dismiss in its entirety.

## Defendant Quality Loan Service Corporation and Eddie Ramirez' Motion for Summary Judgment (Ct. Rec. 18)

Quality Loan Defendants ask the Court to dismiss Plaintiff's lawsuit on the grounds that he does not have standing to obtain the requested relief and because he has not adequately pled the causes of action and cannot prove facts to support his causes of action.  Given that discovery was not permitted to proceed until the parties conferred in advance of the July 5, 2006, Scheduling Conference, as is provided under Federal Rule of Civil Procedure 26(f), the Court construes Quality Loan Defendants' motion as a motion to dismiss in its entirety; Quality Loan Defendants are free to renew their motion for summary judgment once discovery has begun.

Plaintiff opposes the motion, contending that he has standing to bring this lawsuit and has adequately pled his causes of action. Plaintiff also asks the Court to strike a portion of Quality Loan Defendants' moving memorandum.  As explained below, the Court finds Plaintiff has standing and, when viewing the motion as a Motion to Dismiss, finds Plaintiff alleged sufficient facts to survive on all of his causes of action, except Wrongful Interference with Contractual

ORDER -- 2

Relationship; however, Plaintiff is given leave to file an amended complaint within three weeks of entry of this Order. The Court also grants Plaintiff's Motion to Strike Portions of Defendants' Brief in Support of Motion for Summary Judgment.

**A.   Background**

This litigation involves real property commonly known as 5711 N. Division Spokane, WA 99207 (hereinafter, "the Property"). (Def. Statement of Facts 1.) The real property is encumbered by a real estate contract; a dispute exists as to who holds a purchaser's interest.

On April 23, 1993, a Deed of Trust was recorded in Volume 1419, Page 1130 of the Official Records of Spokane County, Washington. (Decl. Owen Ex. C.) The Deed of Trust states that on March 25, 1993, Brian and Lisa Hooper (Grantor) entered into an agreement involving this Property and the Beneficiary was Metropolitan Mortgage & Securities Co., Inc. ("Metropolitan Mortgage."):

> This deed is for the purpose of securing performance of each agreement of grantor herein contained, and payment of the sum of One hundred forty three thousand and no/100's Dollars, ($143,000.00) with interest, in accordance with the terms of a promissory note of even date herewith payable to Beneficiary or order, and made by Grantor, and all renewals, modifications and extensions thereof, and also such further sums as may be advanced or loaned by Beneficiary to Grantor, or any of their successors or assigns, together with interest thereon at such rate as shall be agreed upon.

(Decl. Owen Ex. C at 1: "Hooper-Metropolitan Mortgage Deed of Trust")

On May 1, 1996, the Hoopers and Mr. Barbanti entered into a real estate contract for the Property ("the Hooper-Barbanti contract"). This contract was recorded on May 24, 1996, under Auditor's File No. 9605240463 in Spokane County, Washington. The Hooper-Barbanti contract is held by Allego Escrow Services under account 15208. (Decl. Barbanti

ORDER -- 3

¶ 2.)  This contract was apparently seller-financed as Mr. Barbanti provides monthly payments to the Hoopers.  (Decl. Barbanti ¶ 2.)

On February 10, 1997, Metropolitan Mortgage assigned its 1993 Hooper-Metropolitan Mortgage Deed of Trust to The Bank of New York. (Decl. Owen.)

On July 21, 2003, Mr. Barbanti and Royal Pottage Enterprises entered into a Quitclaim Deed through which Mr. Barbanti: "convey[ed] and quit claim[ed] to ROYAL POTTAGE ENTERPRISES, INC., a Delaware corporation, the following described real estate [the Property], . . . together with any interest therein which the Grantor may hereafter acquire." (Decl. Glagowski Ex. A.: "Barbanti-Royal Pottage Enterprises Quitclaim Deed").  This Quitclaim Deed was recorded in the Official Records of Spokane County as Instrument Number 4929722.

On August 24, 2005, Defendant Quality Loan issued a Notice of Intent to Forfeit (NOIF) addressed to Mr. Barbanti, stating:

> You are hereby notified that the Seller [The Bank of New York] has declared you in default on the obligation under the Real Estate Contract dated 5/1/1996 by and between BRIAN R. HOOPER AND LISA M. HOOPER, as sellers and MARCO T. BARBANTI, as purchaser, recorded on 5/24/1996 . . . .

(Def. Statement of Fact 4; Dec. Owen Ex. A.; Decl. Barbanti.)  This NOIF advised that reinstatement monies in the amount of $49,249.85 could be tendered to Quality Loan Service Corp. in order to remedy this default. (Decl. Owen Exhibit A at 4.)  The NOIF is signed by Eddie Ramirez on behalf of Quality Loan Service Corp. "as Agent for the Seller."  (Decl. Owen Ex. A at 5.)

Quality Loan Defendants issued a Declaration of Forfeiture (DOF) on January 11, 2006, with the Spokane County Auditor's Office under file

ORDER -- 4

number 5329760. (Plaintiff's Statement of Fact 6; Decl. Owen Ex. B).) Mr. Barbanti claims he never received a copy of the DOF from any of the Defendants and to the best of his knowledge a copy of the DOF was not posted on the Property. (Decl. Barbanti ¶ 5.)

Quality Loan Defendants concede the forfeiture was conducted in error because The Bank of New York never had the seller's interest in the Hooper-Barbanti contract.[1] The parties dispute whether the process of forfeiture and the forfeiture itself violated the Washington Real Estate Contract Forfeiture Act, constituted the unauthorized practice of law, violated the Consumer Protection Act and Collection Agency Act, and involved the slander of title or the wrongful interference with contractual relations.

**B.   Standing**

Quality Loan Defendants ask the Court to find that Plaintiff lacks standing to sue because Plaintiff suffered no injury-in-fact with reference to the allegations in the Complaint since he did not hold any title interest in the Property during the forfeiture proceedings because he quitclaimed his interest to Royal Pottage Enterprises, Inc.[2] In response, Plaintiff submits he alleged an injury-in-fact because the

---

[1] Yet, surprisingly in their reply state, "Plaintiff does owe a debt to Defendant Bank of New York and he is over twenty-nine months delinquent on that debt." (Ct. Rec. 64 at 12 ll. 3-4.)

[2] In Quality Loan Defendants' reply, they provide more legal authority and arguments to support their position that Plaintiff lacks standing. In light of the new arguments presented in the reply, Plaintiff was allowed to file a supplemental response.

ORDER -- 5

Barbanti-Royal Pottage Enterprises Quitclaim Deed only transferred his interest *in* the Property, but did not transfer his contractual rights under the Hooper-Barbanti contract, such as his obligation to make monthly payments to the Hoopers or his other obligations as purchaser. Plus, Plaintiff states R.C.W. § 61.30.140 provides him with standing to sue under the Washington Real Estate Contract Forfeiture Act.

   1.   Standing: in general

A plaintiff must have standing to bring suit in order to satisfy the "case and controversy" requirement of Article III. *Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152 (1969). In order to have standing, a plaintiff must allege: (1) the plaintiff has suffered an injury-in-fact, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) the injury is likely to be redressed by a favorable decision." *Lortiz v. U.S. Ct. of Appeals for the Ninth Cir.*, 382 F.3d 990, 992 (2004); *see also Simon v. E. Kent. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Satisfying the standing requirements is vital because the court is without authority to rule on substantive issues if standing is lacking and the case must be dismissed. *Snake River Farmers' Ass'n, Inc. v. Dep't of Labor*, 9 F.3d 792, 795 (9th Cir. 1993).

In order to show an "injury-in-fact," the plaintiff must allege sufficient facts to show that the injury is "actual or imminent, not conjectural or hypothetical." *Lortiz*, 382 F.3d at 992 (quoting *Envtl Def. Ctr. v. Env't Prot. Agency*, 344 F.3d 832, 863 (9th Cir. 2003). The Court finds finding Plaintiff alleged a sufficient injury-in-fact. The Washington Supreme Court's decision in *Biehn v. Lyon*, 29 Wash. 2d 750

ORDER -- 6

(1948), supports Plaintiff's position that different types of property-related rights exist, such as both a contractual right and an interest in the property, and that a quitclaim deed does not transfer one's contractual rights under the real estate contract. Although there is a factual distinction between *Biehn* and the instant case given that Mr. Biehn was the individual *receiving* payments under a real estate contract, whereas Mr. Barbanti is the individual *making* payments under a real estate contract, the Court does not find that this distinction affects the Washington Supreme Court's holding that legal title and interests under a real estate contract are two distinct interests. This legal premise is supported by Washington hornbook law as well:

> We know from section 9 of this chapter that the purchaser under a real estate installment contract (REK) has an "interest" in the land sold and that this interest is "real property." It follows that the purchaser has an interest in land that may be transferred or, more precisely in the terminology of land law, conveyed. We also know that the purchaser has contract rights. These rights, too, may be transferred, by assignment. Therefore, a complete transfer of the purchaser's interests should be in a form that qualifies as both a conveyance and a contract assignment. In this section we will consider two kinds of vendors' transfers, absolute transfers and transfers as security for an obligation.

18 WASH. PRACT. § 21.12 "Conveyance and mortgage by purchaser" (2006). Furthermore, the Washington Practice section on "Purchaser's interest" makes clear that, even though a purchaser has obligations under a real estate contract, the purchaser also has contract rights:

> Obviously the purchaser in a real estate contract has contract rights. Whatever rights he has originate in the contractual agreement with the vendor. Though a typical real estate installment contract (REK) contains far more covenants by the purchaser than by the vendor, the purchaser's rights are certainly not insignificant. They include at least the vendor's covenant to give a fulfillment deed and usually some other covenants, such as a covenant to provide title insurance, a covenant as to the state of title, perhaps a

ORDER -- 7

> covenant for attorneys' fees if the purchaser (or the vendor) prevails in a lawsuit arising out of the contract, and possibly other vendor's covenants.

18 Wash. Practice § 21.9 (2006).

Accordingly, Mr. Barbanti had two separate interests created by the Hooper-Barbanti Contract: (1) a personal contractual right and (2) an interest in the Property. On the current record, the Court agrees with Plaintiff that the Barbanti-Royal Pottage Enterprises Quitclaim Deed only transferred Mr. Barbanti's interest in the Property but did not affect his rights or responsibilities under the real estate contract. The statutory section addressing the form and effect of a quitclaim deed highlights that the quitclaim deed transfers one's interest in the property/premises only:

> Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quitclaim to the grantee, his heirs and assigns in fee of all the then existing legal and equitable rights of the grantor in the *premises* therein described, but shall not extend to the after acquired title unless words are added expressing such intention.

R.C.W. § 64.05.050 (emphasis added); *see also Muscatel v. Storey*, 56 Wash. 2d 635 (1960); *Ennis v. Ring*, 49 Wash. 2d 284 (1956).

Therefore, because Mr. Barbanti retained his rights/obligations under the real estate contract, the Court finds he alleged a sufficient injury-in-fact given that the forfeiture of the Hooper-Barbanti contract resulted in the cancellation of Mr. Barbanti's rights in the contract and all rights to the monies previously paid and improvements made. *See* R.C.W. § 61.21.100. In addition, Plaintiff entered into a landlord-tenant agreement and the forfeiture allegedly injured his responsibilities as a landlord. The loss of an opportunity to engage in

ORDER -- 8

a business enterprise and the loss of funds spent in preparation for the enterprise is sufficient to constitute an injury-in-fact. *Singleton v. Wulff*, 428 U.S. 106, 113 (1975).

The Court also finds Mr. Barbanti's alleged injury is traceable to Quality Loan Defendants' issuance of the NOIF and DOF. Also, Plaintiff's injury is redressable by the Court as the wrongful forfeiture can be set aside and damages, including exemplary damages per R.C.W. § 61.30.150(2), can be awarded. For these reasons, the Court **denies** Quality Loan Defendants' motion **in part**, finding Plaintiff has standing to assert his causes of action (for Washington Real Estate Contract Forfeiture Act see below).

2.  <u>Washington Real Estate Contract Forfeiture Act</u>

Quality Loan Defendants argue Plaintiff does not have standing to sue under the Washington Real Estate Contract Forfeiture Act because he does not have an ownership interest in the Property. After reviewing the Act, the Court finds Plaintiff does have standing to sue as he may seek to set aside the forfeiture under R.C.W. § 61.30.140. Section 61.30.140 provides, in pertinent part:

> (2) An action to set aside the forfeiture permitted by this section may be commenced *only by a person entitled to be given the required notices under RCW 61.30.040 (1) and (2)*. . . .

R.C.W. § 61.30.140 (emphasis added). Accordingly, central to the issue of whether Plaintiff has standing to set aside the forfeiture is whether he was entitled to be given notice under R.C.W. § 61.30.040(1) and (2). Section 61.30.040 provides, in pertinent part:

> (1) The required notices <u>shall be given</u> to *each* purchaser last known to the seller or the seller's agent or attorney giving the notice *and* to each person who, at the time the notice of intent to forfeit is recorded, is the last holder of record of

ORDER -- 9

>     a purchaser's interest. Failure to comply with this subsection
>     in any material respect shall render any purported forfeiture
>     based upon the required notices void.
>         (2) The required notices <u>shall also be given to</u> each of the
>     following persons whose interest the seller desires to forfeit
>     if the default is not cured:
>             (a) The holders and claimants of record at the time the
>                 notice of intent to forfeit is recorded of any interests
>                 in or liens upon all or any portion of the property
>                 derived through the purchaser or which are otherwise
>                 subordinate to the seller's interest in the property; and
>                 . . .

(Emphasis added.)  Under the terms of the statute, the determination of who constitutes a seller and a purchaser is essential to determining whether one has standing to sue under § 61.30.140.

Section 61.30.010 provides definitions for Real Estate Contract Forfeiture Act terms, and in pertinent part states:

>     (7) "Purchaser" means the person denominated in a real estate
>     contract as the purchaser of the property or an interest
>     therein or, if applicable, the purchaser's successors or
>     assigns in interest to all or any part of the property,
>     whether by voluntary or involuntary transfer or transfer by
>     operation of law. . . .
>                                 . . .
>     (9) "Seller" means the person denominated in a real estate
>     contract as the seller of the property or an interest therein
>     or, if applicable, the seller's successors or assigns in
>     interest to all or any part of the property or the contract,
>     whether by voluntary or involuntary transfer or transfer by
>     operation of law. . . . However, "seller" does not include an
>     assignee or any other person whose only interest or claim is
>     in the nature of a lien or other security interest and does
>     not include an assignee who has not been conveyed legal title
>     to any portion of the property.

Although neither party provided the Court with guidance as to how to assign "seller" or "purchaser" designations within the instant dispute, both the definition of "purchaser" and "seller" direct the Court to the "real estate contract."  "'Real estate contract' means any written agreement for the sale of real property in which legal title to the

ORDER -- 10

property is retained by the seller as security for payment of the purchase price. [It] does not include earnest money agreements and options to purchase." R.C.W. § 64.04.010(1).  Here, the parties agree the real estate contract at issue is the Hooper-Barbanti Real Estate Contract.  The problem for Quality Loan Defendants is that The Bank of New York does not constitute the "seller" under this real estate contract.

The Bank of New York, through the Quality Loan Defendants, instituted the forfeiture[3] proceedings.  The Bank of New York was assigned Metropolitan Mortgage's interest in the Hooper-Metroplitan Mortgage Deed of Trust in 1997.  The Bank of New York was not assigned any interest in the Hooper-Barbanti contract; accordingly, under the Hooper-Barbanti contract, the Hoopers are the "Seller."

Regardless, under § 61.30.040(1) notices shall be sent to *each* purchaser last known to the Seller.  Washington Practice summarizes the classes of parties who must receive notice:

> 1. Each purchaser known to the seller or to the seller's agent or attorney, at the purchaser's last known address.
> 2. The last record holder of a purchaser's interest at the time the notice of intent to forfeit is recorded.
> 3. Holders and claimants of record of subordinate liens at the

---

[3] "Forfeit" or "forfeiture" is defined as a:

means to cancel the purchaser's rights under a real estate contract and to terminate all right, title, and interest in the property of the purchaser and of persons claiming by or through the purchaser, all to the extent provided in this chapter, because of a breach of one or more of the purchaser's obligations under the contract. A judicial foreclosure of a real estate contract as a mortgage shall not be considered a forfeiture under this chapter.

R.C.W. § 61.30.010(4).

ORDER -- 11

>    time the notice of intent to forfeit is recorded.
>    4. Persons occupying the property at the time the notice of intent to forfeit is recorded and whose identities are reasonably discoverable.

1B WASH PRACT. § 77.30. Clearly, Mr. Barbanti the initial Purchaser under the Hooper-Barbanti contract was entitled to notice. Quality Loan Defendants submit, because Mr. Barbanti assigned his interest in the legal title of the property to Royal Pottage Enterprises via a Quitclaim deed, Royal Pottage Enterprises is the only party entitled to notice. However, Quality Loan Defendants' argument fails to recognize that a variety of parties are entitled to notice under § 61.30.040 - and Mr. Barbanti was one of these parties given that he was the initial purchaser and known to Quality Loan Defendants since the real estate contract was recorded - and is evidenced by the fact that Mr. Barbanti was sent a copy of the NOIF. Therefore, the Court finds Mr. Barbanti may seek to set aside the forfeiture under § 61.30.140 and **denies in part** Quality Loan Defendants' motion.

**C.   Motion to Dismiss Causes of Action**

As discussed above, the Court treats Quality Loan Defendants' motion as a motion to dismiss because the parties have not had an opportunity to engage in any discovery. Accordingly, the Court analyzes Quality Loan Defendants' requests under a dismissal standard.

1.   <u>Dismissal Standard</u>

A cause of action should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cal. Dump Truck Owners Assoc. v. Assoc. Gen. Contractors of Am.*, 562 F.2d 607, 614 (9th Cir. 1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45

ORDER -- 12

(1957)); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). When resolving a Federal Rule of Civil Procedure 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pleaded factual allegations as true, and (3) determine whether plaintiffs could prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Integrated Res. Equity Corp. v. Founders Bank of Ariz.*, 74 F.3d 1246 (9th Cir. 1996). A claim should be dismissed where there is a "lack of cognizable legal theory" or "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the court finds that the complaint is insufficient as plead, the court should provide plaintiff with an opportunity to amend the complaint unless the pleading "could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

    2.    <u>Real Estate Contract Forfeiture Act, R.C.W. §§ 61.30 *et seq.*</u>

Quality Loan Defendants submit Plaintiff (1) cannot present evidence that they violated R.C.W. §§ 61.30 *et seq.*, (2) Plaintiff failed to file and serve the summons and complaint within sixty days, and (3) Plaintiff waived his right to protest the forfeiture action since he did not comply with R.C.W. §§ 61.30.070(2)(g) or 61.30.110(2).

First, as noted above, the Court is determining whether Plaintiff alleged sufficient facts to support a claim that Quality Loan Defendants violated R.C.W. §§ 61.30 *et seq.*, and is not analyzing whether any genuine issues of material fact exist. The Court finds Plaintiff

ORDER -- 13

alleged sufficient facts in Complaint ¶¶ 21-52 to support a Real Estate Contract Forfeiture Act violation cause of action against Quality Loan Defendants.

Second, in regard to service, R.C.W. § 61.30.140(2) requires, "such an action shall be commenced by filing and serving the summons and complaint not later than sixty days after the declaration of forfeiture is recorded." The Declaration of Forfeiture was recorded on January 11, 2006. Plaintiff filed the instant Complaint on February 28, 2006; accordingly, the Complaint was timely filed. Plaintiff submits he served Quality Loan on March 8, 2006, and Mr. Ramirez on March 9, 2006; Quality Loan Defendants do not challenge this. Accordingly, at this stage, the Court finds Plaintiff complied with the statutory time requirements.

Lastly, the Court finds Mr. Barbanti has not waived any right to set aside the forfeiture action.[4] The Real Estate Contract Forfeiture

---

[4] In response to Quality Loan Defendants' waiver argument, Plaintiff filed a Motion to Strike Portions of Defendants' Brief in Support of Motion for Summary Judgment (Ct. Rec. 40). The Court agrees that Quality Loan Defendants' reference to *Schultz v. Werelius*, 60 Wash. App. 450 (1991), in support of their argument that Plaintiff waived any right to bring this lawsuit by waiting until the Declaration of Forfeiture was filed to bring suit was misleading given that the Barbanti-Royal Pottage Enterprises Inc. Quitclaim Deed occurred *prior* to the Declaration of Forfeiture being filed - unlike the occurrence of events in *Schultz*. Accordingly, the Court grants Plaintiff's motion to strike and disregards the citation to *Schultz*.

ORDER -- 14

Act specifically gives a limited group of persons the ability to ask a court to set aside a forfeiture, *see* R.C.W. § 61.30.140, and this right is not dependant upon the individual presenting a challenge prior to the declaration of forfeiture being recorded. *Id.* § 61.30.140(1).

For the above reasons, the Court **denies in part** Quality Loan Defendants' motion, finding that Plaintiff may continue pursuing his violation of the Real Estate Contract Forfeiture Act cause of action.

3.   Unauthorized Practice of Law

Quality Loan Defendants ask the Court to dismiss Plaintiff's cause of action asserting that they engaged in the unauthorized practice of law. In Complaint ¶ 54, Plaintiff alleges that Quality Loan Defendants prepared and executed the NOIF. In ¶ 55, Plaintiff explains that such conduct constitutes the practice of law; and in ¶ 59 states that Quality Loan Defendants are not licensed attorneys in the State of Washington. Accordingly, the Court finds Plaintiff alleged sufficient facts to survive a motion to dismiss on this cause of action. *See Bennion, Van Camp, Hagen & Ruhl v. Kassler Escrow, Inc.*, 96 Wash. 2d 443, 446 (1981).

Quality Loan Defendants concede that Mr. Ramirez is not licensed to practice law and that he prepared and executed the NOIF. Therefore, the only remaining issue is whether Defendants' conduct constituted the practice of law - a determination that is best left to the August 27, 2006, hearing, at which time the Court will hear Plaintiff's Motion for Partial Summary Judgment Regarding the Unauthorized Practice of Law (Ct. Rec. 54). A full record should be developed by that time as to what exactly the Quality Loan Defendants did, and the legal arguments on

ORDER -- 15

whether such acts constitutes the practice of law will be more fully developed. Accordingly, the Court **denies** Quality Loan Defendants' motion **in part**.

4. <u>Washington Collection Agency Act, R.C.W. §§ 19.16 *et seq.*</u>

Quality Loan Defendants contend (1) Plaintiff does not have standing to assert a claim under the Washington Collection Agency Act (WCAA), R.C.W. §§ 19.16 *et seq.*, because he is not the owner of the Property since ownership was transferred to Royal Pottage Enterprises, Inc. and (2) the Court should find Quality Loan Defendants did not violate R.C.W. §§ 19.16 *et seq.* as a matter of law because Defendant Quality Loan is not a collection agency but is rather a trust company or a loan/finance company - recognized exceptions to the definition of a collection agency.

As discussed above, the Court finds Plaintiff alleged an injury-in-fact which provides him with standing. Quality Loan Defendants do not argue that Plaintiff failed to allege a violation of the WCAA, but rather that they are not "collection agencies" and so Plaintiff cannot maintain a WCAA against them. The question of whether Quality Loan Defendants acted as a "collection agency," rather than as a trust company or a loan/finance company is a question of fact that will be better determined after the parties have engaged in discovery. The Court **denies in part** Quality Loan Defendants' motion.

5. <u>Consumer Protection Act, R.C.W. §§ 19.86 *et seq.*</u>

Quality Loan Defendants argue the Court should dismiss Plaintiff's Consumer Protection Act (CPA) cause of action because Plaintiff failed to plead the statutory requirements and cannot establish (1) an unfair

ORDER -- 16

or deceptive act or practice, (2) an act effecting an injury to property or business, or (3) the public interest element. Also, again, Quality Loan Defendants argue that Plaintiff lacks standing because he is not the owner of the Property.

First, as ruled above, the Court finds Plaintiff has standing. Next, to be successful on his CPA cause of action, Plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring within trade or business, (3) affecting the public interest, (4) injuring the plaintiff's business or property, and (5) a cause relation between the deceptive act and the resulting injury. *Robinson v. Avis Rent A Car System, Inc.*, 106 Wash. App. 104 (2001); *Hangman Ridge Training Stables, Inc. v. Safeco*, 105 Wash. 2d 778 (1986). The Court finds the following allegations in the Complaint sufficiently state a CPA cause of action:

> The unauthorized practice of law by Defendants Quality Loan, Ramirez, Johnson, and OCWEN LLC violates RCW 2.48.170 *et seq* and also violates the Consumer Protection Act (RCW 19.86 *et seq*). The herein alleged acts by Defendants Quality Loan, Ramirez, Johnson, and OCWEN LLC violate RCW Chapter 19.86 in that these listed Defendants engaged in unfair and deceptive acts and practices, in the conduct of trade or commerce, which impacted the public interest, and caused injury to the Plaintiff in his business and property in an amount to be proven at trial, and there is a causal link between the unfair and deceptive act and the injury suffered by the Plaintiff.

Complaint ¶ 61 (again reiterated at ¶ 72). Plaintiff also alleges that Quality Loan is a collection agency doing business in Washington and, while not licensed as such in Washington (*Id.* ¶¶ 4 & 11), it attempted to collect a claim or debt under the Hooper-Barbanti contract which was not owed by Plaintiff (*Id.* ¶¶ 15-16), and false statements were made while attempting to collect the debt from Plaintiff (*Id.* ¶¶ 22-29). The Complaint quite clearly contains all of the allegations necessary to

ORDER -- 17

support a CPA cause of action.  The question of whether Plaintiff can present sufficient facts to create a genuine issue for trial is a matter for summary judgment.  Therefore, the Court **denies in part** the motion.

6. <u>Slander of Title</u>

Quality Loan Defendants contend they have not slandered title to the Property because Plaintiff has not pled malicious intent and also cannot prove malicious intent on the part of Quality Loan Defendants. Plus, Defendants argue Plaintiff does not have standing to assert a slander of title claim because he is not the owner of the property.

First, as ruled above, the Court finds Plaintiff alleged a sufficient injury-in-fact.  Second, in order to bring a slander of title action, Plaintiff must allege, and then later ultimately prove:

> (1) false words; (2) maliciously published; (3) with reference to some pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in plaintiff's pecuniary loss.

*Rorvig v. Douglas*, 123 Wash. 2d 854, 859 (1994).  After reviewing ¶¶ 73-82 of the Complaint, the Court finds Plaintiff failed to plead malicious intent.  Accordingly, Quality Loan Defendants' motion to dismiss is granted in part; however, the Court **grants Plaintiff leave to file an amended Complaint within three weeks of entry of this Order** if he so wishes to add a "malicious" allegation.  *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

7. <u>Wrongful Interference with Contractual Relationship</u>

Quality Loan Defendants also submit (a) Plaintiff does not have standing to bring a wrongful contractual interference claim because he is not the owner of the Property and (b) Plaintiff failed to plead that

ORDER -- 18

there was a termination or a breach of Plaintiff's lease with his tenant, that Quality Loan Defendants acted intentionally to interfere with Plaintiff's lease, or that they had knowledge of Plaintiff's contractual relationship with Plaintiff's tenant. Plaintiff highlights that he brought the Wrongful Interference cause of action against Defendant Ocwen and its purported agent/employee Greg Kelsey, and not Quality Loan Defendants. Therefore, the Court **denies as moot in part** Quality Loan Defendants' motion.

8. <u>Damages</u>

Lastly, Quality Loan Defendants argue Plaintiff cannot establish that he suffered damages as a result of their conduct since he is not the owner of the Property and thus could not have suffered any damages as a result of the forfeiture action instituted by Quality Loan Defendants. Plaintiff claims his contractual relationship with his tenant has been damaged, along with the title that he was to pass to Royal Pottage Enterprises, Inc. For the reasons discussed above under "standing: injury-in-fact," the Court finds Plaintiff alleged sufficient damages as a result of Quality Loan Defendants wrongful forfeiture -- whether he can ultimately prove such damages is an issue to be decided later.

For the reasons given above, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment **(Ct. Rec. 18)** is **CONSTRUED** as a Motion to Dismiss, and as such is **DENIED IN PART** (Plaintiff has standing to sue and alleges sufficient facts to maintain Real Estate Contract Forfeiture Act, Unauthorized Practice of Law, Washington Collection Agency Act, and Washington Consumer Protection Act

ORDER -- 19

causes of action), **DENIED AS MOOT IN PART** (Wrongful Interference with Contractual Relationship cause of action), **and GRANTED IN PART** (Plaintiff failed to plead the "malice" element for Slander of Title - *however*, Plaintiff is allowed to file an amended complaint within three weeks of entry of this Order to add an appropriate allegation).

2. Plaintiff's Motion to Strike Portions of Defendants' Brief in Support of Motion for Summary Judgment **(Ct. Rec. 40)** is **GRANTED**.

**DATED** this   7th   day of July 2006.


                              S/ Edward F. Shea
                              EDWARD F. SHEA
                        UNITED STATES DISTRICT JUDGE

ORDER -- 20