UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARCO T. BARBANTI,<br><br>           Plaintiff,<br><br>      v.<br><br>QUALITY LOAN SERVICE CORP., a California Corporation; EDDIE RAMIREZ AND JANE DOE RAMIREZ, Husband and Wife; BANK OF NEW YORK, a New York corporation, as Trustee, Pursuant to the Terms of That Certain Pooling and Servicing Agreement Dated as of 11/1/96 Related to Metropolitan Asset Funding Inc., Mortgage Pass-through Certificates Series 1996-a; OCWEN LOAN SERVICING, LLC, a Delaware corporation; GINA JOHNSON AND JOHN DOE JOHNSON,<br><br>           Defendants. | NO.  CV-06-0065-EFS<br><br>**ORDER ENTERING RULINGS FROM DECEMBER 13, 2006, HEARING** |

     A hearing was held in the above-captioned matter on December 13, 2006.  Plaintiff was represented by Timothy Durkop.  Matthew Cleverly appeared on behalf of Defendants Quality Loan Service Corp. and Eddie Ramirez (hereinafter collectively, "Quality Loan Defendants"), while Robert Wayne Norman Jr. appeared telephonically on behalf of the Bank of New York, Ocwen Loan Servicing, LLC ("Ocwen"), and Gina Johnson.  Before the Court were (1) Plaintiff's Motion for Partial Summary Judgment

ORDER -- 1

Regarding Violations of the Collection Agency Act (Ct. Rec. 205), (2) Plaintiff's Motion for Partial Summary Judgment Regarding the Unauthorized Practice of Law by Defendants Johnson and Ocwen (Ct. Rec. 207), and (3) Quality Loan Defendants' Motion to Compel Discovery (Ct. Rec. 172). After reviewing the submitted material and applicable legal authority and hearing oral argument, the Court is fully informed. This Order serves to supplement and memorialize the Court's oral rulings.

## I.  Factual Statement[1]

The real property ("the Property") involved is located at 5711 N. Division Street in Spokane, Washington. (Ct. Rec. 232: Jones Decl. ¶ 3.) On March 25, 1993, Brian and Lisa Hooper obtained a loan ("the Loan") from Metropolitan Mortgage & Securities Co., Inc. ("Metropolitan Mortgage") in the amount of $143,000 in order to purchase this Property. The Loan was secured by a Deed of Trust on the Property, which was recorded on April 23, 1993. *Id.* ¶ 4. On May 1, 1996, the Hoopers and Mr. Barbanti entered into a real estate contract for the Property ("the Hooper-Barbanti contract"). This contract was recorded on May 24, 1996, under Auditor's File No. 9605240463 in Spokane County, Washington.

On February 10, 1997, Metropolitan Mortgage assigned its 1993 Hooper-Metropolitan Mortgage Deed of Trust to the Bank of New York, as trustee under a Polling and Servicing Agreement dated as November 1, 1996. (Ct. Rec. 232: Jones Decl. ¶ 7.) Ocwen began servicing the Loan

---

[1] In ruling on the motions for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created utilizing this standard.

ORDER -- 2

for the Bank of New York, as trustee, in June 2001. *Id.* ¶ 8. In April 2003, the Loan went into default. *Id.* ¶ 9. On June 12, 2003, Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP, ("Moss") sent a letter to Mr. Barbanti regarding the default of the Loan ("Moss Letter"); this letter was signed by Jody Shimmel, an employee of Moss at that time. (Ct. Rec. 232: Jones Decl. ¶¶ 10 & 11; Ct. Rec. 231: Ishak Decl. ¶ 4; Ct. Rec. 211-1 at 16.)

On September 15, 2003, Ms. Shimmel began working for Ocwen, where she was employed until April 11, 2005. *Id.* ¶ 4. On or about March 22, 2004, while she was working for Ocwen, Ms. Shimmel sent a letter to Mr. Barbanti regarding the continued default of the Loan. (Ct. Rec. 232: Jones Decl. ¶ 11; Ct. Rec. 211-1 at 14.)

In June 2005, Ocwen sent a referral to Quality Loan Service to handle the defaulted loan. (Ct. Rec. 232: Jones Decl. ¶ 14.) The Notice of Intent to Forfeit (NOIF), which was prepared by Quality Loan Service Corp. and signed by Eddie Ramirez, was issued on or around August 24, 2005. Ocwen received the Declaration of Forfeiture (DOF) of the Hooper-Barbanti Contract from Quality Loan Service to sign on behalf of the Bank of New York on or about January 11, 2006; and the DOF was signed by Ocwen's employee, Gina Johnson, on behalf of the Bank of New York. *Id.* ¶¶ 16 & 17.

Neither Ms. Johnson nor Ocwen are licensed to practice law in the state of Washington. Ms. Johnson is, and was at all times material hereto, an employee of Ocwen and all of her actions in connection with the signing and issuance of the DOF were within the scope of her employment. Ocwen is licensed as an out-of-state collection agency in Washington.

ORDER -- 3

## II. Plaintiff's Motion for Partial Summary Judgment Regarding Violations of the Collection Agency Act (Ct. Rec. 205)

Plaintiff asks the Court to make the following findings: (1) Ocwen is a licensed out-of-state collection agency, (2) Ocwen violated certain provisions of RCW 19.16.250, (3) Plaintiff is entitled to application of RCW 19.16.450, and (4) Ocwen was attempting to collect a promissory note secured by the Property. Plaintiff also asks the Court to declare that no person may ever collect any amount other than principal on the note secured by the Property. In response, Ocwen contends the Washington Collection Agency Act (CAA) does not apply *in this case* because it was not acting as a debt collector and, even if the CAA is applicable to Ocwen in this case, Plaintiff failed to prove Ocwen engaged in prohibited conduct that was not taken in good faith.

Even though Ocwen is licensed in Washington as an out-of-state collection agency, the Court finds the CAA is not applicable to the instant facts because Ocwen was acting to enforce a security interest and not to collect a "debt"[2] as defined by the FDCPA. The CAA, RCW 19.16 *et seq.*, governs collection activities in Washington by both collection agencies and out-of-state collection agencies. An "out-of-state collection agency" is defined as:

> a person whose activities within this state are limited to collecting debts from debtors located in this state by means

---

[2] Debt" is defined as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).
ORDER -- 4

>of interstate communications, including telephone, mail, or facsimile transmission, from the person's location in another state on behalf of clients located outside of this state, but does not include any person who is excluded from the definition of the term "debt collector" under the federal fair debt collection practices act (15 U.S.C. Sec. 1692a(6)).

RCW 19.16.100(4). Therefore, if a person is excluded from the definition of "debt collector" under the federal Fair Debt Collection Practices Act (FDCPA), then they are not an out-of-state collection agency under the CAA.

As the Court previously explained in its Order Entering Rulings from November 21, 2006, Hearing (Ct. Rec. 244), the Court is persuaded by the reasoning in *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002), and finds this matter distinguishable from *Piper v. Portnoff Law Associates, Ltd.*, 396 F. 3d 227 (3d Cir. 2005). In *Hulse*, the Oregon district court determined that defendant was not collecting a debt:

>foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

195 F. Supp. 2d at 1204. Two other district courts determined that enforcement of a security interest is not debt collection for all purposes of the FDCPA, but only for purposes of 15 U.S.C. § 1692f(6). *See Bergs v. Hoover, Bax & Slovacek, L.L.P.*, 2003 WL 22255679 (N.D. Texas 2003); *Rosado v. Taylor*, 324 F. Supp. 917 (N.D. Ind. 2004). The Court is persuaded that the inclusion of an enforcer of a security interest in § 1692f(6) implies that the term "debt collector" does not include an enforcer of a security interest for any other section of the

ORDER -- 5

FDCPA. Accordingly, the Court determines the enforcement of a security interest through a nonjudicial forfeiture does not constitute the collection of a debt for purposes of the FDCPA. Resultantly, the Court finds Ocwen was not a debt collector under the FDCPA in these circumstances and, therefore, even though licensed as an out-of-state collection agency it was not acting as such here. In addition, the Court concludes conduct, which serves as the basis for a finding of a violation under RCW 19.16.250, must be conduct engaged in by a licensee while acting as an out-of-state collection agency. Therefore, even though Ocwen is a licensee as defined by RCW 19.16.110(9), the Court finds is appropriate to **dismiss** Plaintiff's CAA cause of action against Ocwen and **denies** Plaintiff's motion.

### III. Plaintiff's Motion for Partial Summary Judgment Regarding the Unauthorized Practice of Law by Defendants Johnson and Ocwen (Ct. Rec. 207)

The issues presented by this motion are (1) whether Ms. Johnson and Ocwen individually or collectively engaged in the practice of law by executing and issuing the DOF and (2) whether forfeiting a real estate contract on behalf of third parties constitutes the practice of law in Washington. In response, Ocwen submits it was not engaging in the unauthorized practice of law, relying principally upon *Perkins v. CTX Mortgage Co.*, 137 Wash. 2d 93 (1999); Ms. Johnson had the authority to sign the DOF pursuant to RCW 61.30.050(1); and there is no evidence of collusion between Ocwen and Moss.

To address the first issue, two questions must be answered: (1) whether Ocwen and Ms. Johnson's conduct constituted the practice of law, and if so (2) whether such conduct was authorized. *See* RCW 2.48.170; *Wash. State Bar Assoc. v. Great W. Union Fed. Sav. & Loan Assoc.* ("*Great*

ORDER -- 6

*Western*"), 91 Wash. 2d 48, 56-57 (1978). "The line between those activities included within the definition of the practice of law and those that are not is oftentimes difficult to define." *Bennion, Van Camp, Hagen & Ruhl v. Kassler Escrow, Inc.* ("*Bennion*"), 96 Wash. 2d 443, 446 (1981). Yet, the Washington Supreme Court recognized the preparation of legal documents that create or impact legal rights is the practice of law:

> The "practice of law" does not lend itself easily to precise definition. However, it is generally acknowledged to include not only the doing or performing of services in the courts of justice, throughout the various stages thereof, but in a larger sense includes legal advice and counsel and the preparation of legal instruments by which legal rights and obligations are established. Further, selection and completion of preprinted form legal documents has been found to be the "practice of law."
> . . .
> The services at issue here are ordinarily performed by licensed attorneys, involve legal rights and obligations, and by their very nature involve the practice of law. We thus must agree with the trial court's conclusion that the selection and completion of form legal documents, or the drafting of such documents, including deeds, mortgages, deeds of trust, promissory notes and agreements modifying these documents constitutes the practice of law.

*Id*. at 446-47 (quoting *Great Western*, 91 Wash. 2d at 54-55); *Perkins v. CTX Mortgage Co.*, 137 Wash. 2d 93, 97 (1999); *Washington v. Hunt*, 75 Wash. App. 795, 804 (1994). It is the court's role to determine whether conduct constitutes "the practice of law." *Bennion*, 96 Wash. 2d. at 452-53. In determining whether conduct constitutes "the practice of law," the court is to focus on the nature and character of the service rendered, rather than the fact of compensation or the nature or status of the person performing the services. *Id.* at 451; *Hunt*, 75 Wash. App. at 802.

With these legal principles in mind, the Court concludes that

ORDER -- 7

conducting a forfeiture through the issuance of a declaration of forfeiture, which terminates the purchaser's right, title, and interest in the property and under the contract, RCW 61.30.070(1)(f) & (2)(d), has legal consequences on the parties to the documents. The nature and character of these services are consistent with conduct that an attorney engages in. Therefore, the Court finds Ocwen, through Ms. Johnson, engaged in the practice of law by issuing the DOF. Accordingly, Plaintiff's motion is granted in part.

The next question is whether Defendants' conduct was "authorized." It is undisputed Ms. Johnson signed the DOF; however, it is unclear as to how the DOF was actually prepared, i.e. whether Quality Loan Defendants simply submitted a "complete" DOF to Ms. Johnson who signed it without reviewing it or whether the arrangement between these parties anticipates that Ocwen/Ms. Johnson will review the DOF to ensure that it is correct before signing. Without knowing the specifics about this process, the Court is unable to conduct the risk/benefit analysis set forth in *Perkins* to determine whether in this instance lay persons should be allowed to engage in the practice of law. *See Perkins v. CTX Mortgage Co.*, 137 Wash. 2d 93 (1999); *Cultum v. Heritage House Realtors, Inc.*, 103 Wash. 2d 623 (1985). Therefore, Plaintiff's motion is denied in part.

Plaintiff also argues that Ocwen is engaging in the unauthorized practice of law by representing itself as a part of or affiliated with the Moss law firm as is evidenced by the letters sent by Jodi Shimmel. Although the letters create confusion, the Court finds Defendants presented sufficient evidence to rebut a finding of collusion. Defendants provided declarations explaining that Ms. Shimmel worked

ORDER -- 8

initially for Moss and then later for Ocwen and that she sent these letters out during her respective times at each employer. With this information, the Court denies Plaintiff's motion in part.

The Court is unpersuaded by Ocwen and Ms. Johnson's argument that their conduct was "authorized" because RCW 61.30.050(1) allows a "seller's agent" to advance a forfeiture proceeding.[3] Given that the legislature does not have the ability to allow an unlicensed individual to practice law, *see Bennion*, 96 Wash. 2d at 446, and in light of the rule of statutory interpretation that statutes are to be construed as constitutional if possible, *see Gould v. Aerospatiale Helicopter Corp.*, 40 F.3d 1033, 1035 (9th Cir. 1994); *United States v. Buckland*, 289 F.3d 558, 564 (9th Cir. 2002), the Court interprets RCW 61.30.050(1) as allowing Ms. Johnson, as an agent for the seller to *sign* the DOF if she is an agent under a power of attorney. Here, there is no evidence that Ms. Johnson has a power of attorney for the Bank of New York; therefore, she and Ocwen cannot take advantage of RCW 61.30.050(1). In addition, because the terms of RCW 61.30.050(1) are clear regarding who can effectively sign the declaration of forfeiture on behalf of the seller, the Court concludes Ocwen and Ms. Johnson are not entitled to a good

---

[3] Section 61.30.050(1) provides:

> The required notices shall be in writing. The notice of intent to forfeit shall be signed by the seller or by the seller's agent or attorney. The declaration of forfeiture shall be signed and sworn to by the seller. The seller may execute the declaration of forfeiture through *an agent under a power of attorney* which is of record at the time the declaration of forfeiture is recorded, but in so doing the seller shall be subject to liability under RCW 61.30.150 to the same extent as if the seller had personally signed and sworn to the declaration.

(Emphasis added.)

ORDER -- 9

faith defense.  *See Watson v. Peterson Enters.*, 57 F. Supp. 2d 1101, 1111 (1999).

In summary, the Court **grants in part** Plaintiff's motion, finding Ocwen and Ms. Johnson engaged in the practice of law by signing the DOF, **and denies in part** the motion, finding genuine issues of material fact were created as to whether such conduct was authorized and finding no evidence to support a collusion argument.

**IV. Quality Loan Defendants' Motion to Compel Discovery (Ct. Rec. 172)**

At the hearing the parties updated the Court as to the status of discovery.  With this information, the Court was fully informed and set in place the following deadlines: Plaintiff must answer the outstanding Interrogatories and Requests for Production no later than January 8, 2007.  Also, by this date, Plaintiff is to provide Quality Loan Defendants with the documents requested in the deposition deuces tecum. The Court cautioned Plaintiff's counsel that if discovery is not provided by January 8, 2007, the Court will impose sanctions.

The remainder of the motion is held in abeyance until January 25, 2007, at 9:00 a.m., at which time the Court will held a telephonic hearing (parties are to call 509-376-8880; use of cell phones prohibited).  One week prior to this hearing, Quality Loan Defendants shall provide the Court with an update as to this motion in a brief limited to five pages; if necessary, Plaintiff may file a five-page response within three days of the "update brief;" no reply shall be filed.

For the above given reasons, **IT IS HEREBY ORDERED:**

1.   Plaintiff's Motion for Partial Summary Judgment Regarding

ORDER -- 10

Violations of the Collection Agency Act **(Ct. Rec. 205)** is **DENIED**; Plaintiff cannot pursue CAA claims against Ocwen.

2. Plaintiff's Motion for Partial Summary Judgment Regarding the Unauthorized Practice of Law by Defendants Johnson and Ocwen **(Ct. Rec. 207)** is **GRANTED IN PART** (Defendants engaged in practice of law) **and DENIED IN PART** (no evidence of collusion; genuine issues of material fact as to whether conduct is authorized)

3. Quality Loan Defendants' Motion to Compel Discovery **(Ct. Rec. 172)** is **GRANTED IN PART** (Plaintiff is to provide requested discovery no later than January 8, 2007) **and HELD IN ABEYANCE IN PART** until **January 25, 2007, at 9:00 a.m.** (telephonic hearing; briefing schedule set forth above).

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide a copy to counsel.

**DATED** this ___3rd___ day of January 2007.


                       S/ Edward F. Shea
                       EDWARD F. SHEA
                  UNITED STATES DISTRICT JUDGE


Q:\Civil\2006\0065.dec.06.msj.3.wpd

ORDER -- 11